IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JANICE WELCH, | ) | CASE NO. 1:20CV00065 |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| UNITED STATES OF AMERICA, | ) | |
| | ) | **REPORT AND RECOMMENDA-** |
| Defendant. | ) | **TION RE PLAINTIFF'S MOTION** |
| | ) | **FOR SUMMARY JUDGMENT** |

**I.**

Janice Welch sued the United States on January 13, 2020,[1] alleging medical malpractice by healthcare workers at the Louis Stokes Cleveland Department of Veterans Affairs Medical Center.[2] She sues as administratrix of the estate of her late husband, John A. Martello, and individually as the surviving spouse. Martello died on January 19, 2019 when an abdominal aortic aneurysm ruptured.[3]

Welch believes her case is so strong that, instead of having to go to trial to prove it, the law entitles her to summary judgment on the basis of the materials she presents in her

---

[1] ECF #1.
[2] ECF #1, at 4-5. *See* https://www.va.gov/northeast-ohio-health-care/, last accessed on 3/8/22.
[3] ECF #5, at 2.

1

motion papers.⁴

The VA opposes Welch's motion in two ways. The first way is by challenging some of the materials Welch uses to support her motion for summary judgment.⁵ I recently issued a report and recommendation on the VA's motion to exclude Welch's medical expert.⁶ The second way is through its brief in opposition and the materials it proffers, which include a report from the VA's own medical expert, James H. Black, III, MD, DFSVS, FACS.⁷

The District Judge referred this case to me for resolution of pretrial matters and discovery disputes, including issuing a report and recommendation on Welch's motion for summary judgment.⁸ I find that the VA has amply met its affirmative duty to point out specific facts in the record that establish multiple genuine issues of material fact. The law leaves these issues to the factfinder to decide, not to me. I further find that Welch is not entitled to judgment as a matter of law as the summary judgment standard requires. Accordingly, as I explain more fully below, I recommend that Welch's motion be denied.

## II.

*Applicable state and federal law.* To recommend a ruling on Welch's motion, I look to both state and federal law. This duality in the governing laws arises because Welch sued

---

⁴ ECF #88; #111.
⁵ ECF #58 (to exclude testimony of Welch's expert, Kaj H. Johansen, M.D., Ph.D., FACS); #92 (to exclude and to strike an institutional disclosure of an adverse event and the recording of a meeting discussing the disclosure).
⁶ ECF #131.
⁷ ECF #109; #64-1.
⁸ ECF #96; non-document minutes of proceedings, 9/23/21.

the VA under the Federal Tort Claims Act. Normally, the doctrine of sovereign immunity would prevent Welch from suing a federal agency like the U.S. Department of Veterans Affairs or one of the VA medical centers for medical malpractice. That doctrine says that a sovereign country like the United Stated is immune from suit by private individuals like Welch. The FTCA, though, provides a limited waiver of sovereign immunity. That waiver in turn makes it possible for Welch to sue for her husband's death.

The FTCA's waiver of sovereign immunity has a built-in limitation that is important here. Welch can sue the VA for her husband's death only to the extent a private person "would be liable to the claimant in accordance with the law of the place where the act or omission occurred."⁹ In other words, Ohio law applies for determining liability since the alleged medical malpractice occurred in Ohio. That means Ohio law provides the rule of decision in medical malpractice cases brought under the FTCA. That in turn means I must look to Ohio law when analyzing the medical malpractice liability claims Welch alleges in her complaint.

Put somewhat differently, Ohio law answers the substantive question: What must Welch show to hold the VA liable for the alleged medical malpractice? Federal law, however, governs the procedure of getting there.¹⁰ Federal law answers the procedural question: How must Welch proceed in order to litigate her claim?

Ohio law is clear on what Welch must prove to win her case at trial.

---

⁹ 28 U.S.C. § 1346(b)(1).
¹⁰ *See generally Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 495–96 (1941). *See also Legg v. Chopra,* 286 F.3d 286, 289–90 (6th Cir. 2002); *Gallivan v. United States,* 943 F.3d 291, 293 (6th Cir. 2019).

> Under Ohio law, as it has developed, in order to establish medical malpractice, it must be shown by a preponderance of the evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct result of such doing or failing to do some one or more of such particular things.[11]

As Ohio law tells Welch what she must do to win her case, federal law tells her how she goes about winning summary judgment under Fed. R. Civ. P. 56.[12] That rule provides:

> **(a) Motion for Summary Judgment or Partial Summary Judgment.** A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.[13]

Under this rule, I must grant Welch's motion if she shows there is no genuine dispute as to any material fact, as supported by the record, and that she is entitled to judgment as a matter of law. A dispute about a material fact is genuine where the evidence presented is such that a reasonable jury could return a verdict for the non-movant—in other words, for the VA in this instance.[14] I make this determination under the evidentiary standard applicable to the case in a trial on the merits. Thus, in most civil cases including this one, a dispute over a material fact is genuine where a reasonable jury could find for the non-

---

[11] *Bruni v. Tatsumi,* 46 Ohio St. 2d 127, 346 N.E.2d 673, 677 (1976) (citations omitted).
[12] *See Weaver v. Caldwell Tanks, Inc.,* 190 F. App'x 404, 408 (6th Cir. 2006).
[13] Fed. R. Civ. P. 56(a).
[14] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

4

movant by a preponderance of evidence.[15]

In adjudicating Welch's motion, I accept the evidence the VA submits as true, and examine the facts and draw all reasonable inferences from those facts in a light most favorable to it as the non-moving party.[16] Welch has the burden of production with respect to evidentiary support for her motion, and must provide sufficient evidence such that a reasonable jury could rule in her favor. The VA in turn has an affirmative duty to point out specific facts in the record that establish a genuine issue of material fact.[17] Summary judgment is appropriate if the VA fails to present evidence sufficient to establish the existence of an element essential to its case and on which it would bear the evidentiary burden of proof at trial.[18] As the non-moving party, the VA "must show that there is doubt as to the materials facts and that the record, taken as a whole, does not lead to a judgment"[19] for Welch. The VA "must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor."[20]

---

[15] *Anderson*, 477 U.S. at 252.
[16] *Pelland v. Wal-Mart Stores, Inc.*, 282 F. Supp. 3d 1019, 1023 (N.D. Ohio 2017) (citing *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456 (1992)); *84 Video/Newsstand, Inc. v. Sartini*, No. 1:07 CV 3190, 2009 WL 10656014, at *5 (N.D. Ohio June 22, 2009), *aff'd*, 455 F. App'x 541 (6th Cir. 2011) (citations omitted); *Santana-Guillen v. Johnson & Johnson*, No. 3:07 OE 40157, 2009 WL 1545791, at *2 (N.D. Ohio June 3, 2009) (citations omitted).
[17] *Santana-Guillen*, 2009 WL 1545791, at *1-2; *Anderson*, 477 U.S. at 252 (noting that the non-movant must show more than "[t]he mere existence of a scintilla of evidence" in opposing a motion for summary judgment).
[18] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).
[19] *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 403 (6th Cir. 1992) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir. 1989)).
[20] *Guarino, id.* (citing *Street*, 886 F.2d at 1476–77).

*First requirement: no genuine dispute as to any material fact.*  In asking me to grant her summary judgment, Welch is inviting me to a place where I do not belong: the province of the jury.  I have reviewed the materials each party has put forward in support of the respective positions on Welch's motion for summary judgment.  It is plain—as is often so with medical malpractice cases involving highly technical issues—that there are genuine issues of material fact that preclude summary judgment.

This case involves technical medical issues that will need to be explained to the jury.  As but one example, Welch pleads the following in her complaint:

> At all times relevant to this action, defendant United States of America . . . violated its duty to provide John A. Martello competent, safe and acceptable care and treatment by 1) failing to add the AAA [abdominal aortic aneurysm] to his Problem List, Medical History or list of chronic conditions on his Electronic Medical Record . . ., 2) failing to periodically monitor and measure the size of the AAA, a dynamic, progressive condition which becomes more dangerous the larger it gets, 3) failing to refer Mr. Martello to a vascular surgeon, who specializes in managing and treating AAAs, or to his primary care physician . . . and, 4) failing to review his previous diagnostic studies when he came to the VA hospital for treatment, 5) failing to establish an ultrasonographic surveillance system to track the growth of the AAA, 6) failing to detect and report the AAA while treating Mr. Martello for other medical conditions and 6) failing to order or perform timely surgical intervention which would have saved John's life.[21]

Each side will present its evidence on these technical medical issues, and it will be up to the jury to decide who is right.  By its nature, this case will require a battle of the experts who will dispute the reasonable standard of care and skill, whether that standard was breached, and, if so, whether omissions or commissions reflecting or outside of that

---

[21] ECF #5, at 5.

standard proximately caused the death of John A. Martello. Those facts go to the heart of the VA's potential liability here. They are unquestionably material. And the disputes about these material facts are unquestionably genuine, since a reasonable jury could return a verdict for the VA if it were to believe the opinion of the VA's medical expert, James H. Black, III, MD, DFSVS, FACS.

With Black's report, the VA has presented affirmative evidence on issues critical to Welch's case and sufficient to allow a jury to return a verdict in the VA's favor. For example, Black opines that Martello delayed too long in getting to an emergency room, and failed to report his own personal history of an abdominal aortic aneurysm once he arrived there.[22] He further opines that Martello's health and the doctors' ability to save his life were complicated by Stage 3 chronic kidney disease Martello was diagnosed with in 2013.[23] The picture is also complicated by the fact that Martello was diagnosed with lung cancer, emphysema, and chronic obstructive pulmonary disease in November 2014. He refused to enroll in a smoking cessation clinic, and refused to have a screening ultrasound of his abdominal aortic aneurysm, which, according to Black are two recommendations within the standard of care.[24]

Welch has, of course, presented a report from her own medical expert, Kaj H. Johansen, M.D., Ph.D., FACS.[25] With her motion for summary judgment, Welch now asks me to take a side. I refuse her invitation. "This approach of weighing the credibility of the

---

[22] ECF #64-1, at 3.
[23] *Id.* at 2, 4.
[24] *Id.* at 2.
[25] ECF #5-1; #65-11.

competing expert reports amounts to improper fact-finding. . . . Indeed, competing expert opinions present the ' "classic battle of experts" and it [is] up to a jury to evaluate what weight and credibility each expert opinion deserves.' "[26] Summary judgment is not the stage at which credibility determinations of this sort are made. I am "unwilling to invade the province of the jury and evaluate what weight and credibility the expert opinions deserve."[27]

The VA points to more than Black's report to describe where the case has genuine disputes of material fact. Several key examples suffice. For instance, the very first alleged malpractice Welch identifies in her complaint is the failure to add the abdominal aortic aneurysm to Martello's problem list, medical history, or the list of chronic conditions on his electronic medical record.[28] But the VA responds with testimony by other physicians that suggests that the problem list is not the tool relied upon for understanding a patient's medical history. Moreover, doctors who treated Martello knew of the abdominal aortic aneurysm by reviewing Martello's medical records.[29] The VA also provides testimony of a physician who states that "[t]here's a lot of places that a AAA can be viewed in the medical records. You assume that all clinicians view the problem list."[30] The jury will have to decide which side is right.

---

[26] *Phillips v. Cohen*, 400 F.3d 388, 399 (6th Cir. 2005) (citing *Rodgers v. Monumental Life Ins. Co.*, 289 F.3d 442, 449 (6th Cir. 2002), and quoting *Cadmus v. Aetna Cas. & Sur. Co.*, 100 F.3d 956 (6th Cir. 1996) (quoting *In re Bendectin Prod. Liab. Litig.*, 732 F. Supp. 744, 749 (E.D. Mich. 1990))).
[27] *In re Bendectin Products Liability Litigation*, 732 F. Supp. at 749.
[28] ECF #5, at 5. *See also* ECF #88-1, at 9-10; #88-2, at 1-8.
[29] ECF #109, at 12.
[30] ECF #109-2, at 12.

Welch also points to the VA's failure "to detect and report the AAA while treating Mr. Martello for other medical conditions."[31] Yet the VA identifies testimony from doctors who did just that.[32] Welch alleges that the VA failed "to order or perform timely surgical intervention which would have saved John's life."[33] The VA responds with its expert testimony indicating that Martello's delay in getting to an emergency room delayed surgery on the aneurysm and ultimately cost him his life.[34]

As I noted above, another key critical element Welch must prove to demonstrate the VA's liability under Ohio law is the standard of care. Welch states that "[t]he standard of care required of a medical doctor is dictated by the custom of the profession."[35] Welch then cites testimony on the customs of the medical profession as it pertains to electronic health records,[36] including noting an abdominal aortic aneurysm on the problem list.[37] Yet testimony the VA cites indicates that those who treated Martello were aware of his aneurysm by reading his medical records, not the problem list.[38]

As part of the allegedly negligent care, Welch also describes the VA's failure "to establish an ultrasonographic surveillance system to track the growth of the AAA" and the failure "to detect and report the AAA while treating Mr. Martello for other medical

---

[31] ECF #5, at 5.
[32] ECF #109, at 11-13.
[33] ECF #5, at 5.
[34] ECF # 64-1, at 3.
[35] ECF #88-1, at 9.
[36] ECF #88-1, at 9-10.
[37] ECF #88-2, at 1-2.
[38] ECF #109, at 12.

9

conditions."³⁹ The VA in response identifies testimony indicating that Martello didn't want to pursue these treatments or screenings contrary to the doctors' advice.⁴⁰

Weighing the evidence in the light most favorable to the VA at this summary judgment stage would allow a reasonable factfinder to find for the VA. Welch contests the conclusions that the VA seeks to establish in its defense. At trial, each side will present its evidence, and it will be up to the jury to decide whom to believe. I find that numerous genuine issues of material fact regarding Martello's care and treatment exist. Those issues will need to go to the jury, who will then decide which side to believe. Because Welch has failed to show that there are no genuine disputes as to any material fact, I recommend that her motion for summary judgment be denied.

*Second requirement: entitled to judgment as a matter of law.* The summary judgment inquiry is a two-part one. To be successful under Fed. R. Civ. P. 56, Welch must show that there is no genuine dispute as to any material fact, as supported by the record, and that she is entitled to judgment as a matter of law.⁴¹

In light of my previous ruling⁴² on the VA's first motion in limine,⁴³ I recommend that Welch's motion for summary judgment be denied for another reason. Welch is not entitled to judgment as a matter of law. As things stand, she cannot meet her burden of proving what the applicable standard of care was at the time of John A. Martello's death,

---

³⁹ ECF #5, at 5.
⁴⁰ ECF #109, at 14; #79-1, at 7; #58-2, at 225-26.
⁴¹ Fed. R. Civ. P. 56(a).
⁴² ECF #131.
⁴³ ECF #58.

whether the VA breached that standard, and, if so, whether that breach resulted in his death. Welch cannot meet this burden because she cannot rely on the opinion of Dr. Johansen as I previously held. Ohio law, though, permits only one way to meet this burden: through testimony from a medical expert witness.

"It is well settled in Ohio that in order to prevail in a medical malpractice claim, a plaintiff must demonstrate through expert testimony that, among other things, the treatment provided did not meet the prevailing standard of care."[44] The requirement for a medical expert, therefore, is twofold. First, the expert is needed to establish the requisite standard of care and skill. Second, the expert is needed to show by a preponderance of the evidence that the injury, or in this instance the death, complained of "was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct result of such doing or failing to do some one or more of such particular things."[45]

Moreover, Ohio courts have applied this law to physicians and nurses alike. "[E]xpert testimony is necessary to establish the prevailing standard of care where the professional skills and judgment of a nurse are alleged to be deficient. Ohio courts have

---

[44] *Ramage v. Cent. Ohio Emergency Serv., Inc.*, 64 Ohio St. 3d 97, 592 N.E.2d 828, 833 (1992).
[45] *Bruni*, 346 N.E.2d at 677 (citations omitted).

11

long recognized this principle."[46]

There is an exception to this law. "It should be noted that there is an exception to that rule in cases where the nature of the case is such that the lack of skill or care of the physician and surgeon is so apparent as to be within the comprehension of laymen and requires only common knowledge and experience to understand and judge it, and in such case expert testimony is not necessary."[47]

Welch's allegations are far beyond ordinary negligence where she might argue that a medical expert is not needed or where the doctrine of *res ipsa loquitur* might permit an inference of negligence to be drawn.[48] Her claims far exceed anyone's common knowledge. The notion of an abdominal aortic aneurysm alone is complex enough. And Welch adds significantly more complexity in describing her husband's care leading up to his death. None of this medical knowledge can be considered common knowledge for any juror from any venire from any part of the country. It's precisely for this reason why Ohio law requires an expert to explain these types of issues to a jury.

Without a medical expert as Ohio law requires, Welch cannot prove the standard of

---

[46] *Ramage,* 592 N.E.2d at 833.
[47] *Bruni,* 346 N.E.2d at 677 (citing *Hubach v. Cole,* 133 Ohio St. 137, 12 N.E.2d 283 (1938), and *Morgan v. Sheppard,* 91 Ohio Law Abs. 579, 188 N.E.2d 808 (8th Dist. 1963)).
[48] *See, e.g., Ault v. Hall,* 119 Ohio St. 422, 164 N.E. 518 (1928) (discussing the *res ipsa loquitur* doctrine where a surgical sponge was left in the patient's abdomen, and holding that a failure to remove such sponges before incision is finally closed is prima facie evidence of negligence); *Jones v. Hawkes Hosp. of Mt. Carmel,* 175 Ohio St. 503, 196 N.E.2d 592 (1964) (ordinary negligence towards a patient who fell from a hospital bed while unattended); *Burks v. Christ Hosp.,* 19 Ohio St. 2d 128, 249 N.E.2d 829 (1969) (same). Compare *Ross v. Am. Red Cross,* 567 F. App'x 296, 311 (6th Cir. 2014) (holding that a case involving follow-up care required expert testimony).

care and skill that healthcare professionals must adhere to; whether the healthcare professionals who treated her husband failed to provide that level of care; and, if so, whether that failure of commission or omission was the proximate cause of her husband's death. In short, without a medical expert to testify on these issues related to liability, Welch cannot prove elements essential to her case. Therefore, even if Welch had successfully shown that there is no genuine dispute of any material fact, she would be unable under Ohio law to prove liability against the VA. Consequently, she does not make the showing necessary to meet the second requirement of summary judgment. Even in the absence of a genuine dispute of any material fact, Welch still is not entitled to judgment as a matter of law. Accordingly, I recommend that Welch's motion for summary judgment be denied on this second ground as well.

### III.

Medical malpractice cases, especially cases as complicated as this one, are bad candidates for summary judgment. That is particularly true for motions brought by the plaintiff.

Welch cannot show that there is no genuine dispute as to any material fact. True for her case like so many other medical malpractice cases, genuine issues of material fact exist on key aspects of Welch's claim. Also typical of these cases is the battle of experts. The jury, though, must decide who's victorious in that battle. Moreover, should the District Judge adopt my order to exclude Welch's medical expert witness, then Welch cannot

13

demonstrate that she is entitled to judgment as a matter of law—even if I should accept her arguments and ignore the genuine issues of material facts that pervade her case.

Accordingly, for the foregoing reasons, I recommend that Welch's motion for summary judgment[49] be denied.

Dated: March 14, 2022                              s/ William H. Baughman, Jr.
                                                   United States Magistrate Judge

---

[49] ECF #88.

## **NOTICE REGARDING OBJECTIONS**

Any party may object to this report and recommendation. To do so, you must serve and file your objections with the Clerk of Court within 14 days after being served with this report and recommendation. If this document is being served on you by mail, service by mail is complete when the document is mailed, not when you receive it. If you fail to serve and file your objections within this 14-day time period, you forfeit your rights on appeal, absent a showing of good cause for such failure.